HENDRY, Judge.
Alice E. Frasure, a licensed real estate broker and William A. Rutherford, an unlicensed real estate salesman in Mrs. Frasure’s employ, were responsible for effectuating the sale of 1,050 acres of land in Broward County, Florida for the sum of $5,201,077.80. Mrs. Frasure and Mr. Rutherford brought together[1] McArthur *313 Jersey Farm, Inc., as seller, and Joseph La-Croix, as the holder of an option to purchase. By reason of a series of assignments and a new option, the transaction originally between LaCroix and McArthur Jersey Farm, Inc. was ultimately closed by McArthur Jersey Farm, Inc. as seller, and S. A. Rizzo and Sara G. Rizzo, his wife, as purchasers, who thereafter conveyed their interest to Ke-Ri-La Development Co., a Florida corporation.
The real estate commission for this sale was $175,000 and is the subject matter of this litigation. The contractual obligation in regard to this commission arose by virtue of a contract, dated June 4, 1958, between McArthur Jersey Farm, Inc. as owner, S. A. Rizzo and Sara G. Rizzo, his wife, as optionee, which provided, in pertinent part:
“12. Optionee hereby expressly assumes to pay all of the real estate brokerage commission amounting to $175,000 to Alice E. Frasure and William A. Rutherford arising from this sale of said property by Owner and said purchaser by Optionee. The parties hereto expressly understand and agree that Optionee and the said real estate agents have concluded among themselves an agreement satisfactory as between themselves concerning the payment of said real estate brokerage commission and that the Owner has no interest, right or obligation of any kind in or respecting such agreement for payment of real estate brokerage commission. It is expressly understood and agreed by and between the Owner and Optionee that there is no deduction from or diminution of the said total purchase price referred to above by reason of the Optionee hereby agreeing to assume all liability for the payment of said real estate brokerage commission. Said real estate agents accordingly hereby agree to look solely to Optionee for payment of said commission and hereby expresslj' release Owner from any and all liability for payment of said brokerage commission in part or in whole whether the option herein granted be exercised by Option-ee or not.”
Attached to the above agreement following the execution thereof, appears the following to which the signature of Alice E. Frasure and William A. Rutherford are affixed:
“The undersigned real estate agents involved in the transaction referred to in the Option Agreement above do hereby join in the execution of said Option Agreement for the purpose of affirming and approving said Option Agreement in all respects and especially as said Option Agreement pertains to the agreement of Optionee therein to pay the brokerage commission due to the undersigned real estate agents in this transaction.
“Further the undersigned real estate agents and the said Optionee in mutual consideration of the terms and conditions contained herein have in the Option Agreement above and for other good and valuable consideration, each to the other in hand paid, do hereby agree as follows:
“1. Optionee will pay Alice E. Fra-sure, a Registered Real Estate Broker, the broker’s commission on this transaction in the amount of $175,000, said amount to be evidenced by a non-interest bearing promissory note dated as of date of closing; said note to be paid in fourteen equal installments of $12,-500 each, with the first installment coming due six months from date and every six months thereafter until said note is fully paid.
“2. Said Alice E. Frasure, a Registered Real Estate Broker, may assign said note in full or in part to William A. Rutherford, or his heirs, and said William A. Rutherford can further assign said note without restriction, upon the condition that in the event that William A. Rutherford elects to *314 assigii or discount' said noté, Optionee shall have first refusal of said assignment after ten days notice in writing.”
Subsequent to this agreement, but prior to the closing Frasure assigned to Rutherford, out of any commission to be paid, $121,600. Thereafter, but still prior to the closing, Rutherford assigned his assignment from Frasure to Carl E. Newcomer and Lois L. Newcomer, his wife, for a valuable consideration. At the closing, the note required by the contract of June 4, 1958 was made -payable by the Rizzos to Frasure and the Newcomers. The Rizzos subsequently assigned their interest ■ in the property to Ke-Ri-La Development Co., which company assumed the obligation, inter alia, of paying the note for real estate commission. ' .
After six of the fourteen payments on the note had been paid, Ke-Ri-La refused to make further payment claiming that, inasmuch as, Rutherford was not licensed the consideration for the note was void. The Newcomers instituted the present litigation, in equity, seeking a declaratory decree of their rights, if any, under the note. Appellee counterclaimed for the return of all monies paid under the note, and this resulted in Frasure' being made a defendant by court order.
After a hearing, the chancellor determined the note to be void and awarded judgment to the defendants on their counterclaim for the monies already paid on the note. The plaintiffs and Frasure appeal.
We must first determine the meaning of § 475.41, Fla.Stat., F.S.A., which provides:
“No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed.”
It is without question that Frasure was a licensed broker and Rutherford was an unlicensed salesman. It necessarily follows that in order for the contract to be void by virtue of § 475.41 there must have been a contract between appellee and Rutherford. If Frasure were the only contracting party, the agreement would be valid insofar as § 475.41 is concerned. The rights of the parties are determined by the contract of June 4, 1958 set out above. Let us examine that agreement, as it pertains to the litigants, in detail.
Paragraph 12, of the main or option "agreement between the purchaser and sell'er created no contract rights in behalf of Frasure or Rutherford. Paragraph 12 of the agreement, decided, as between the buyer and seller, that the real- estate commission would be paid by the purchaser. This paragraph further provided that Fra-sure and Rutherford waived any claims they might have against the seller for brokerage commissions. This did not establish any rights on the part of Frasure or Rutherford to claim brokerage commission. It simply meant that they would look only to the purchaser for whatever commission they might be entitled.
The option agreement decided and determined the rights and duties of the purchaser and seller with regard to each other and this agreement did not confer any rights on either Frasure or Rutherford, it did however, waive any claims which Frasure and Rutherford might have as against the seller.
The contract rights contemplated by § 475.41 were conferred upon Frasure by virtue of paragraph 1 of the addendum to the option agreement, set out above. In this paragraph, the purchasers (appellees) obligated themselves to pay Frasure $175,-000, and no one else for the real estate commission. The Rizzos did not, by this agreement contractually obligate themselves to pay anyone else the real estate commission.
*315 In considering the intentions of the parties to this agreement, it should be borne in mind that the drafter of this contract was an experienced member of the bar. The attorney who drew this agreement was very precise in the use of his language in the explanatory and operative paragraphs.
In the explanatory non-obligatory portions of the contract it referred to Frasure and Rutherford jointly as real estate agents, but in the obligatory portion of the .agreement, whereby the contractual right was established, it referred solely to Alice E. Frasure, a registered real estate broker. The question arises, why did the agreement refer to real estate agents in the non-oblig•atory portion of the agreement and then very specifically have the optionee agree to:
“ * * * [P]ay Alice E. Frasure, a Registered Real Estate Broker, the broker’s commission on this transaction in the amount of $175,000 *
It is reasonable to presume that the reason is because the parties, at the time of the contract, knew that the only one who could legally contract for the commission was Frasure. They therefore wrote the agreement so that Frasure, the only one who could contract, was the only person contractually entitled to the commission. Rutherford acquired no rights by this contract, and at the time of the execution of the contract, the appellees were not contractually obligated to Rutherford in any manner.
Whatever contractual rights Rutherford, (and thereby the Newcomers) had against appellees, were obtained by assignment from Frasure. Campbell v. Romfh Bros., Inc., Fla.App.1961, 132 So.2d 466 does not prohibit this result from being legally acceptable.
In Campbell, supra, the real estate commission was payable by a note jointly to the broker and salesman. Both the broker and salesman instituted an action to recover the commission. The client defended on the ground that § 475.42(d), Fla.Stat., F.S. A., specifically prohibits an action to enforce a contract between a salesman and a client. Only the broker can sue a client. The salesman then assigned his interest in the note to the broker who amended his complaint and continued the litigation alone. The court, being unable to sever the obligation as between the salesman and broker, held the note void. The court ruled that the assignment could not operate to cure the initial defect, and that is the distinguishing feature. In Campbell the note sued on was void at its inception, and a subsequent assignment could not cure it. Here there is no infirmity in the initial obligation, and a subsequent assignment can not operate db initio to void a valid obligation.
The present contract for the payment of real estate commission was obviously drawn with the Campbell case in mind, and for the specific purpose of avoiding that pitfall.
Although Rutherford could not have enforced any agreement for compensation between Frasure and himself by virtue of § 475.41, appellee acquired no rights by virtue thereof, nor does this proposition invalidate the assignment from Frasure to Rutherford.[2]
In view of the fact that the contractual obligation initiating the commission was between a licensed broker and client, it is not void and unenforceable by virtue of § 475.41. The fact that Rutherford was unlicensed does not affect the validity or enforceability of that agreement, since he had no right by virtue of that contract. It was therefore error for the chancellor to decree that Alice E. Frasure could not recover the balance due on the note, and to require her to pay back the sums of money already received.
Inasmuch as, the Newcomers’ rights are derived by virtue of assignment from Fra- *316 sure via Rutherford, it was error for the chancellor to decree that the Newcomers could not recover the balance due on the note, and to require them to pay back the sums of money already received.
Appellees contend that to allow the enforcement of this contract would be tantamount to judicial repeal of § 475.41. We do not agree. If the broker permitted Rutherford to operate out of her office in violation of § 475.42, this would be a matter within the jurisdiction of the Real Estate Commission and not this court.
Accordingly, the judgment appealed is reversed and remanded for the entry of judgment in conformity with this opinion.
Reversed and remanded.

. There is a conflict in the evidence as to the nature and extent of the participation of Fras-ure and Rutherford.

. 6 Am.Jur.2d Assignments, § 89 et seq.